UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SHELTON RAMSEY MUSGRAVE,

      Petitioner,

v.

JAMES SPALDING,

      Respondent.

No. C04-2356Z

ORDER

   This matter comes before the Court on Petitioner Shelton Musgrave's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, docket no. 1. The petition includes three grounds for relief:

   (1) Petitioner's right to due process was violated by the exclusion of exculpatory evidence;

   (2) Petitioner's right to confront witnesses against him was violated when the Petitioner was not permitted to cross-examine the State's sole witness to the homicide about his prior contacts with the police; and

   (3) the cumulative effect of the state court's restrictions on the right to confront witnesses and prevent evidence rendered the Petitioner's trial fundamentally unfair.

2254 Petition, docket no. 1.

ORDER  1–

The petition was referred to United States Magistrate Judge Mary Alice Theiler. The parties fully briefed the issues, docket nos. 5, 12 and 15, and Judge Theiler issued a Report and Recommendation to this Court, docket no. 16. The Report and Recommendation recommended that this Court deny the petition for writ of habeas corpus on the three grounds presented. See Report and Recommendation at 14. The Petitioner concedes that he did not exhaust his third ground for relief in state court. Petitioner's Reply, docket no. 12, at 1. Petitioner objects to the Report and Recommendation's conclusions as to his first two grounds for relief, docket no. 17. Because Petitioner objects to the Report and Recommendation, the Court reviews the petition de novo. 28 U.S.C. § 636. The Court held oral argument on Petitioner's objection on May 19, 2005. The Court has reviewed the briefs and records filed herein and being fully advised, now enters the following order.

## BACKGROUND

The Petitioner is a Washington state prisoner who has filed, through counsel, a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The Petitioner was convicted in state court, after a jury trial, of first degree murder. On appeal, the Washington State Court of Appeals held that the trial court had erred in the suppression of certain evidence, but that the error did not require reversal. Record, docket no. 9, Ex. 9, at 10 (State of Washington v. Caffee).

The Petitioner and the Respondent, James Spalding, Superintendent of the Washington State Reformatory, (hereinafter "State of Washington") generally agree on the Washington State Court of Appeals recitation of the facts which the Court includes here:

> On August 9, 1999, Shelton Musgrave, Jay Stewart, and Michael Caffee were under a freeway overpass near Green Lake in Seattle when a homeless man named David Ballenger was killed. The State charged Musgrave, Stewart, and Caffee with second degree murder, but indicated it would amend the information to charge first degree murder with a deadly weapon if the defendants went to trial.

ORDER  2–

Stewart cooperated with police officers and pleaded guilty to second degree murder, receiving 204 months, within the standard range for second degree murder. Musgrave decided to go to trial and was charged with murder in the first degree with a deadly weapon enhancement, as well as the lesser included crimes of second degree murder, and first and second degree manslaughter. Caffee agreed to plead guilty to first degree manslaughter in return for his testimony at Musgrave's trial.

Caffee was the only eyewitness who testified at Musgrave's trial and provided the following version of events:

On August 9, 1999, Will Allison and Jay Stewart visited Shelton Musgrave at his apartment in Seattle. The three drank a case of beer. The young men then went to Green Lake where they joined up with Caffee.

David Ballenger, a homeless man known to both Caffee and Musgrave, arrived where the other men were located. Stewart started to argue with Ballenger. Both Allison and Stewart then struck Ballenger. Neither Musgrave nor Caffee participated in this initial assault. Allison left and attempted to lead Stewart away, but Stewart ran back to find Ballenger and began kicking and hitting Ballenger.

When a bystander who saw the assault picked up a nearby pay phone, Stewart, Caffee, and Musgrave all yelled at the bystander to hang up the phone. Caffee threatened to beat up the bystander, and Musgrave advised the bystander to leave. The man left, but by then Ballenger had escaped. Police officers arrived and asked the three individuals if they knew anything about a fight. Stewart, Caffee, and Musgrave denied knowledge or participation.

Stewart demanded to know where Ballenger was, and Musgrave eventually led Stewart and Caffee to the freeway overpass where Ballenger made his "camp." Stewart began choking and hitting Ballenger. Musgrave then began kicking Ballenger from behind. Stewart approached Caffee and demanded Caffee's knife. Caffee gave it to him only after repeated requests. Stewart used the knife to stab Ballenger and Musgrave used the knife to cut off Ballenger's sweater. Stewart set Ballenger's sweater on fire and threw it into Ballenger's bedding. Caffee testified Ballenger made a sound that Caffee described as lungs "deflating." Caffee stated he thought Ballenger was dead, but that Musgrave continued to stab Ballenger.

Throughout his testimony, Caffee described his role in Ballenger's death as a reluctant bystander. Caffee explained that during the events he was standing near a freeway support pillar and away from the others, who were under the overpass, watching as the events unfolded. Caffee also testified that he moved around during the events, from behind the pillar to a fence near the overpass, and that Stewart and Musgrave moved around as they attacked Ballenger. After the attack, Stewart returned the knife to Caffee, and Caffee placed the knife in his back pocket. Stewart, Musgrave, and Caffee then left and went back to Musgrave's apartment. Caffee testified that both Stewart and Musgrave threatened to kill anyone who told anyone what happened. . . .

Caffee testified that he pretended to discover Ballenger's body the next day. Police officers were called, and when they arrived Caffee denied any participation in the crime. Caffee was later interviewed and he again denied participation in the crime.

ORDER  3–

Caffee later admitted to police officers that he was present when Ballenger was killed, but stated that Stewart and Musgrave were the primary aggressors.

At trial, a medical examiner testified that Ballenger had suffered 18 stab wounds as well as 5 rib fractures that could have been inflicted by a forceful kick with a heavy boot. The State also introduced into evidence Musgrave's steel-toed boots, which had blood matching Ballenger's DNA (deoxyribonucleic acid) profile on them. Musgrave's left boot exhibited an airborne pattern of droplets, while his right boot contained a blood stain diffused over a large area that was consistent with a contact transfer. The patterns of blood on the boots suggested that the right boot forcefully came into contact with the blood source and that the left boot was close to the vicinity where the impact with the blood source occurred. Blood consistent with Ballenger's DNA profile was also found on Caffee's left rear pants pocket . . . .

Also prior to trial, both State and defense attorneys noted that neither Musgrave nor Caffee had prior criminal convictions and agreed not to introduce evidence of either of the defendants' "teenage history" of "potentially illegal or inappropriate" acts under ER 404(b). Musgrave's attorney stated that if Caffee opened the door in some obvious way, such as stating, "I've never had contact with the police" or "I've never been in trouble before," she would seek to introduce such evidence of inappropriate acts on the issue of Caffee's credibility. The State commented that it was unaware of any acts by Caffee other than smoking cigarettes at school; possibly writing his name in cement; or bragging with Musgrave about "macing bums," and asked for an offer of proof about other acts. Defense counsel replied that it was premature and the court agreed.

During the course of Caffee's direct examination, after he testified about how he had initially lied to police officers, the prosecutor asked Caffee how he felt about talking to police officers about the murder. Caffee responded:

> I was still pretty scared. I don't know, I've never had any real, like, connection with the law before. I've never made any--done anything seriously legal [sic] to get me in trouble, so I've never dealt with the police in a situation like this. And I was, like, kind of scared of what could happen.

Caffee then admitted that he also lied to police officers when they interviewed him at the police station, stating several times that he was trying to be "loyal" to his friend Musgrave.

Four days after Caffee's comments, Musgrave's counsel argued that Caffee's testimony was a "material misrepresentation," and that Caffee had opened the door to impeach the impression that he was a naïve, frightened young man who didn't have the experience to lie to police officers. Defense counsel stated that Caffee had been arrested and questioned for prowling around bikes; stealing bike parts; graffiti; possession of illegal fireworks; and smoking marijuana in public. The State countered that Caffee qualified his testimony and noted that the State did not have any record of Caffee's alleged prior contacts with law enforcement. The court did not allow admission of evidence of prior conduct, stating that the defense had "full and adequate opportunity" to impeach Caffee regarding his fabrications and would continue to have opportunities to impeach Caffee about his misrepresentations to police officers.

After Caffee finished testifying, defense counsel also sought to introduce testimony and photographs by a defense investigator. Defense argued the purpose of the testimony and photographs was to impeach Caffee's testimony regarding his version

ORDER  4–

>of events by showing that Caffee could not have seen what he claimed to have seen from his vantage point. The trial court stated that it would not allow the testimony or photographs, but offered to allow the defense an opportunity to lay a foundation for the introduction of the photographs by recalling Caffee to the stand to determine if they were accurate representations of where he was standing and what he saw. Defense counsel declined to do so and did not further discuss the issue.

Record, docket no. 9, Ex. 9, at 2-4 (State of Washington v. Caffee). The jury convicted Petitioner of first degree murder with a deadly weapon enhancement. Id. The Petitioner appealed his conviction. The Washington State Court of Appeals affirmed the Petitioner's conviction, but held that the trial court's exclusion of the defense investigator's testimony and photographs was "evidentiary error." Although the court held that this exclusion was error, it concluded that "it was unclear on the record that this evidence, had it been admitted, would have changed the outcome of the trial." Record, Ex. 9, at 10 (State of Washington v. Caffee). The Washington Supreme Court denied review. The Petitioner filed this petition on November 22, 2004.

## DISCUSSION

### 1. Standard

Under the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(d), a petition for a writ of habeas corpus may be granted with respect to any claim adjudicated on the merits in state court only if the state court's adjudication was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d). Under the "contrary to" clause, a federal habeas court may grant the writ only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. See Williams v. Taylor, 529 U.S. 362, 412-13 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Id. In addition, a habeas corpus petition may be

ORDER  5–

granted if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

When analyzing a claim that there has been an unreasonable application of federal law, the court first asks whether the state court erred. DePetris v. Kuykendall, 239 F.3d 1057, 1061 (9th Cir. 2001). Only then does the court consider whether any error involved an unreasonable application of controlling law or was contrary to federal law. Id. An error is only an unreasonable application of controlling federal law or contrary to federal law if it is objectively unreasonable, not merely clearly erroneous. Lockyer v. Andrade, 538 U.S. 63, 75 (2003). Finally, the Court applies the standard articulated in Brecht v. Ambrahamson, 507 U.S. 619, 638 (1993), to determine whether a constitutional error was harmless. Habeas relief is warranted only if the error had a "substantial and injurious effect or influence in determining the jury's verdict." Id.[1]

## 2. Exclusion of Evidence

The Washington Court of Appeals held that the exclusion of the defense investigator's testimony and photographs at trial was error and that finding is binding on this Court. DePetris, 239 F.3d at 1061-62. The State of Washington does not challenge this finding. The Court must determine whether the erroneous evidentiary ruling was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court, and if so, whether the error was also "objectively unreasonable." 28 U.S.C. § 2254(d); Lockyer, 538 U.S. at 75. If the error was "objectively unreasonable," the Court then must inquire whether it had a substantial and injurious effect on the jury's verdict.

---

[1] Petitioner argues that the Court should apply the harm standard articulated in Orndorff v. Lockhart, 998 F.2d 1426, 1430 (8th Cir. 1993), when reviewing the harm an error caused the Petitioner. As Petitioner acknowledges, however, this standard was specifically rejected by the Ninth Circuit for federal courts in habeas cases. Bains v. Cambria, 204 F.3d 964, 977 (9th Cir. 2000).

ORDER 6–

### a. Was one of the Petitioner's constitutional rights violated?

The facts of this case are very similar to those of <u>Franklin v. Henry</u>, 122 F.3d 1270, 1273 (9th Cir. 1997), <u>overruled on other grounds by</u>, <u>Payton v. Woodford</u>, 299 F.3d 815 (9th Cir. 2002) and <u>DePetris v. Kuykendall</u>, 239 F.3d 1057 (9th Cir. 2001). In <u>Franklin</u>, the state trial court excluded testimonial evidence by the defendant that his alleged victim, a child, had accused her mother of molesting her in the same way that she accused the defendant of molesting her. 122 F.3d at 1272. The jury convicted Franklin of sexual abuse and he appealed his conviction. The California appellate court ruled that the trial court had erred in excluding the evidence as to the child's accusations about her mother. <u>Id.</u> (citing <u>People v. Franklin</u>, 25 Cal. App. 4th 328, 30 Cal. Rptr. 2d 376 (1994)). The California appellate court concluded that the exclusion of this evidence did not result in a miscarraige of justice because the function of the excluded testimony was to impeach the complaining child's credibility and ample evidence for that purpose was placed before the jury. The court cited evidence of the child's dream about her mother and defendant kissing, evidence that she altered her testimony to accommodate her mother's sensitivity, and evidence from which the jury could infer that the child had access to the Playboy channel. <u>Id.</u> The Supreme Court of California denied review. Franklin filed a petition for habeas corpus in the Federal District Court for the Northern District of California contending that he had been denied due process of law under the federal constitution. The federal district court held that the error of the state trial court did not have "a substantial and injurious effect" on the jury's verdict. On appeal the Ninth Circuit reversed. The Ninth Circuit held that the state trial court's error was of constitutional magnitude because it bore on the credibility of the only percipient witness to the events. <u>Id.</u> at 1273. The <u>Franklin</u> court was unsure of the effect of the exclusion, holding that "[i]n grave doubt as to the effect of the error" it must direct the district court to grant the petition. <u>Id.</u>

ORDER 7–

1     In DePetris, the petitioner was convicted in California state court of first degree murder in the shooting death of her sleeping husband. 239 F.3d at 1058. At trial in state court, the petitioner claimed imperfect self defense – an actual, honest, even if unreasonable, belief that she was in imminent danger. To prove this defense, she sought to have her husband's handwritten journal admitted into evidence. She also wished to testify about how having read the journal contributed to her belief that her husband's threats were serious. Id. at 1059. The journal contained her husband's account of his violent behavior towards his first wife and others. Id. The state trial court excluded as irrelevant the journal and petitioner's testimony about having read it. Id. The California appellate court held that the journal was admissible as a matter of California law and the trial court had erred by excluding it, but concluded that the error was harmless because the jury had heard other evidence relating to the petitioner's husband's propensity for domestic violence. Id. The petitioner filed a petition for writ of habeas corpus in the Federal District Court for the Northern District of California. The federal district court denied habeas relief, holding that the excluded evidence was but "one piece of physical evidence" that was not critical to the defense. Id. at 1061. On appeal the Ninth Circuit disagreed and held that the error was of constitutional magnitude as the petitioner's testimony about having read the journal and its effect on her went to the heart of her claim of imperfect self-defense. Id. at 1062-63. The DePetris court held that the exclusion of the journal and testimony had a substantially injurious effect on the jury's verdict. Id. at 1063-65. The court held the excluded evidence went directly to the petitioner's state of mind and her credibility. Id.

     The Petitioner argues that, as in Franklin and DePetris, the erroneous exclusion of evidence in this case was contrary to clearly established federal law. Petitioner's Objections, docket no. 17, at 6. The Petitioner argues that the excluded investigator's testimony and photographs were critical to his defense because they would have discredited Caffee and the jury had to believe Caffee in order to convict him.

ORDER 8–

The record supports the Petitioner's argument. Caffee testified that he was at three different vantage points during the incident. At the first vantage point, Caffee testified that he stood under the freeway, behind a pillar, looking up a steep incline towards Ballenger's camp. Record, docket no. 11, Ex. 28, at 1172-74. Caffee testified that he then moved around the pillar, up the path to his second vantage point at a grassy area outside of the freeway against a fence. Id. Ex. 30, at 1325-27. Caffee testified that he moved from that location to a third vantage point under the freeway when the other two men involved in the incident, Petitioner and Jay Stewart, moved the body. Id., Ex. 30, at 1338-40.

Both parties agree that what Caffee could see from the second vantage point was critical to his testimony. Caffee testified it was from the second vantage point that he witnessed the crucial aspects of the homicide. See id. at 1336-38. Caffee testified that from this second vantage point he watched Petitioner stab Mr. Ballenger. Id. at 1337-38. Petitioner argues that the evidence erroneously excluded at trial would have demonstrated that Caffee could not have seen the homicide from his second vantage point. This evidence, like the evidence excluded in Franklin, goes directly to the credibility of the only percipient witness. Where a defendant's guilt hinges largely on the credibility of a prosecution's witness, then the erroneous exclusion of evidence critical to assessing the credibility of that witness violates the Constitution. DePetris, 239 F.3d at 1062 (citing Franklin, 122 F.3d at 1273).

Despite the significance of the evidence excluded, this case can be distinguished from Franklin and DePetris in at least one way. At the Petitioner's trial, while the trial judge did not allow the Petitioner to offer the photographs and testimony through the defense investigator, the trial judge did offer to allow the Petitioner to lay the foundation for the photographs by recalling Caffee to the witness stand and ascertaining whether the photographs were accurate representations of the view from where Caffee was standing during the homicide. Record, Ex. 32, at 1767-68. The Petitioner declined to do so. In

ORDER  9–

neither <u>Franklin</u> nor <u>DePetris</u> were the petitioners offered alternative means to offer the excluded evidence.  Despite this option, the Washington Court of Appeals held that the trial court erred in not allowing the Petitioner to offer the defense investigator's testimony and photographs through the investigator.  Record, docket no. 9, Ex. 9, p. 10.

In certain situations, an opportunity to admit evidence through an adverse witness is no opportunity at all.  This is one of those situations.  Caffee had agreed to plead guilty to first degree manslaughter in return for his testimony at Musgrave's trial.  <u>Id.</u> at 2.  Thus, Caffee had an incentive to bolster his testimony against Musgrave.  As the State of Washington acknowledged at oral argument, had Caffee been called to testify regarding the photographs, he most likely would have stated that they did not accurately represent where he was standing, despite his previous testimony placing him where the photographs were taken.  Further, without the testimony of the defense investigator regarding where she was standing when she took the pictures, the trial court may not have had the foundation it needed to admit the photographs at all.  Finally, Petitioner's right to assistance of counsel means "that there can be no restrictions upon the function of counsel in defending a criminal prosecution in accord with the traditions of the adversary factfinding process that has been constitutionalized in the Sixth and Fourteenth Amendments."  <u>Herring v. New York</u>, 422 U.S. 853, 857 (1975).  This includes restrictions on defense counsel's right to make tactical decisions on how to best offer admissible evidence.  <u>See</u> <u>Brooks v. Tennessee</u>, 406 U.S. 605, 612-13 (1972) (striking down a Tennessee statute requiring the Defendant in a criminal case to testify before any other testimony for the defense is heard, in part as a violation of the due process right to have the assistance of the "guiding hand of counsel").  As it is undisputed that the excluded evidence was admissible through the investigator, the Petitioner should have been able, within reasonable limits, to offer that evidence through the means his counsel thought most advantageous to his defense.

ORDER 10–

The similarity of the facts of this case with those of <u>DePetris</u> and <u>Franklin</u> is not undermined by the trial judge's offer to let the Petitioner recall Caffee in order to lay the foundation for the defense investigator's photographs. Instead, the exclusion of the defense investigator's testimony and photographs denied the Petitioner the ability to effectively challenge the credibility of the crucial witness to the crime. This unconstitutionally interfered with the Petitioner's ability to defend himself against the charges brought against him. See <u>DePetris</u>, 239 F.3d at 1065. The Court holds that this failure on the part of the trial court was not merely erroneous, but objectively unreasonable. See <u>Lockyer</u>, 538 U.S. at 75. This was an error of constitutional magnitude.

      **b.**    **Did the exclusion have a substantial and injurious effect on the jury's verdict?**

Having concluded that the exclusion of the evidence at issue was an error of constitutional magnitude, the Court must next determine whether the exclusion had a "substantial and injurious effect" on the jury's verdict. See <u>Brecht</u>, 507 U.S. at 638. The Court concludes that it did.

Caffee was the only eyewitness to testify against the Petitioner and the State relied heavily on his testimony. In fact, the State of Washington acknowledged at oral argument that Caffee was the only source of evidence at trial that put a knife in the Petitioner's hand. However, the State of Washington argues that blood evidence clearly showed that Petitioner participated in the murder, rendering Caffee's testimony less critical. The State of Washington's blood pattern expert, Mr. George Chan, testified that after examining the Petitioner's boots, he concluded that "the impact spatter droplets and the contact transfer pattern on the right boot suggest that the boot forcefully came into contact with the blood source," i.e., Mr. Ballenger's body. Record, docket no. 11, Ex. 31, at 1567. Further, "[t]he small blood deposits on the left boot suggest that the left boot was close to the vicinity when impact to the blood source occurred." <u>Id.</u> at 1568. Mr. Chan went on to testify that the

ORDER 11–

blood spatter patterns were consistent with the scenario that the person wearing the boots kicked the blood source. Id. at 1576. However, on cross-examination, Mr. Chan admitted that there was no scientific way to determine if the blood stains on the Petitioner's boots were the result of one event or multiple events, or if the blood source was the victim's body or some other place where his blood was deposited, such as a knife or a bloodied shirt. Id. at 1579-82, 1607. Given the lack of a definitive explanation for the blood patterns on the Petitioner's boots, Caffee's testimony, and thus his credibility, emerge as the lynchpin of both the State's case against the Petitioner and the Petitioner's defense. The Court finds that the Petitioner's inability to offer evidence directly relevant to the question of Caffee's credibility had a "substantial and injurious effect" on the jury's verdict and GRANTS IN PART the Petitioner's petition for a writ of habeas corpus under 28 U.S.C. § 2254 based on the state trial court's exclusion of the defense investigator's testimony and photographs.

**3.    Restriction on Cross-Examination**

The Petitioner's second objection to the Report and Recommendation involves its conclusion that Petitioner's inability to cross-examine Caffee on his prior contacts with the police was not unreasonable. The Petitioner argues that this restriction was unreasonable because cross-examination would have demonstrated that Caffee had experience with the police and that his initial untruthful statements to the police were a deliberate effort to get away with murder. Petitioner's Objections, at 21.

The Court concludes that the Report and Recommendation's analysis is correct. At trial, Caffee admitted that he had lied to the police. Therefore, the Petitioner need not have demonstrated that Caffee had prior contact with the police to show that he was fully capable of lying to the police. Further, Caffee's testimony was that he had not had any "real" or "serious" contact with the police, not that he had not had any contact. Therefore, Caffee's statement was not inaccurate and could not have been impeached by a cross-examination based on prior, minor run-ins with the police. The Court ADOPTS the Report and

Recommendation with respect to Musgrave's second ground for relief: inadequate opportunity to cross examine Caffee and DENIES IN PART the Petitioner's petition for a writ of habeas corpus on this ground.

## CONCLUSION

The Court GRANTS Shelton Musgrave's petition for a writ of habeas corpus based on the exclusion of the defense investigator's testimony and photographs.  The Court ADOPTS the Report and Recommendation's conclusion dismissing Petitioner's second ground for relief, that his limited cross-examination of the State's witness violated his right to confront the witnesses against him.  The Court ADOPTS the Report and Recommendation's conclusion dismissing Petitioner's third ground for relief, that the cumulative effect of the state court's restrictions impinged on his right to a fair trial.

The Court DIRECTS the Petitioner to file within 10 days of the date of this Order a proposed judgment granting the petition for writ of habeas corpus in accordance with this Order.  The State of Washington shall have 10 days from the date Petitioner's proposed judgment is filed to file any opposition to the proposed judgment.

IT IS SO ORDERED.

DATED this 24th day of June, 2005.

Thomas S. Zilly
United States District Judge

ORDER 13–